IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARVIN BRANDON, RAFAEL AGUILERA, ALDO MENDEZ-ETZIG, individually and on behalf of all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> 3PD, INC., <br><br> Defendant. | Case No. 13-CV-3745 <br><br> **Judge Ronald A. Guzman** <br><br> Magistrate Judge Geraldine Soat Brown |

**PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE
THE EXPERT TESTIMONY OF ROBERT CRANDALL**

The central dispute in this case is whether 3PD misclassified the Plaintiffs and all others similarly situated as independent contractors, when they were actually employees under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Com. Stat. 115/2. The IWPCA creates a presumption that the Plaintiffs are employees, and to rebut that presumption 3PD bears the burden of establishing each of three specific criteria set forth in the IWPCA to rebut that presumption. Specifically, 3PD must establish that 1) the drivers are free from 3PD's control; 2) the drivers perform work outside 3PD's usual course of business or outside all the places of the business of 3PD; and 3) the drivers are engaged in an independently established business. 820 Ill. Comp. Stat. 115/2. The Illinois Supreme Court has recognized that "the three statutory requirements for independent contractor status … are comprised of legal terms and concepts…." AFM Messenger Svc., Inc. v. Dept. of Employ. Sec., 198 Ill.2d 380, 392 (2001).

Despite the fact that the Plaintiffs' employment status is a <u>legal</u> conclusion, 3PD now seeks to introduce expert testimony by an individual named Robert W. Crandall asserting that the Plaintiffs each operated what he calls a "business" based on wholly independent criteria that bear

no relation to the actual, statutory test for the independent contractor exemption. See Report of Robert ("Crandall Report"), attached hereto as Exhibit 1, at 6 ("The Contractor's business model meets the criteria of a business.").[1] Crandall opines in his report that:

> [t]o test whether a contractor is operating a business, one can compare the Contractor's business model to four criteria that are common to business: 1) the requirement for capital investment; 2) the opportunity to expand; 3) the opportunity to generate profits and losses through the hiring of others; and 4) the opportunity to generate profit, loss, and changes in equity value through managerial decisions.

Id. at 3-4. Crandall asserts that the Plaintiffs meet these four criteria and therefore operate businesses. Id. at 6. The Crandall Report further asserts that the Plaintiffs are engaged in a "business" because their circumstances are comparable to other small businesses that operate throughout the United States. Id. at 12-13.

Plaintiffs hereby move to exclude Crandall's testimony pursuant to Federal Rule of Evidence 702. Importantly, numerous other courts, in cases addressing the misclassification of delivery drivers as independent contractors just like here, have held that expert testimony purporting to address the drivers' employment status is inadmissible. See, e.g., Scovil v. FedEx Ground Package Sys., Inc., 2012 WL 10181062, *1 (D.Me. 2012) (holding in a delivery driver misclassification case that expert testimony addressing FedEx's right to control its drivers and the reasons for its control is inadmissible); In re FedEx Ground Package Sys., Inc. Employ. Practices Litig., 2010 WL 1838400, *4-5 (N.D.Ind. 2010) (holding that expert testimony on the extent to which FedEx controlled its drivers was nothing more than an impermissible legal conclusion and was therefore inadmissible); Bostic v. Connor, 524 N.E.2d 881, 885-886 (Oh. 1988) ("Although the ultimate issue of [the plaintiff's] relationship to [the defendant] was a difficult one to decide, the jury did not require any technical or specialized testimony by

---

[1] Plaintiffs of course dispute all factual assertions and conclusions made by Robert Crandall in his report.

appellant's expert to understand the distinctions between an employee and an independent contractor."). Here, like in the cases cited above, Crandall's testimony should be excluded because it is comprised of nothing more than bare legal conclusion. It is well established that expert testimony cannot instruct the Court or jury as to the applicable law or make legal conclusions about the parties' compliance with the law. Good Shepherd Manor Foundation, Inc. v. City of Momence, 323 F.3d 557, 564 (7th Cir. 2003) ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible.").

Second, Crandall's testimony is inadmissible because it is entirely irrelevant. Rather than focus on the central issue in this case – whether the Plaintiffs are employees as that term is defined in the IWPCA – Crandall appears to invent and apply his own subjective criteria for determining whether the Plaintiffs were employees or independent contractors. Such testimony is irrelevant and inadmissible. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 Weinstein & Berger ¶ 702[02], p. 702–18).

Finally, Crandall's testimony is inadmissible for the additional reason that it is not based on any "genuine expertise," but rather it consists of a basic factual analysis that is well within the ken of any layperson. Niebur v. Town of Cicero, 136 F.Supp.2d 915, 919 (N.D.Ind. 2001) (distinguishing between "testimony that reflects genuine expertise…and something that is nothing more than fancy phrases for common sense.") (quoting United States v. Hall, 93 F.3d 1337, 1342 (7th Cir. 1996)). Regardless of whether Crandall's experience would enable him to assist a jury understand some aspect of the transportation industry, "he does not attempt to do so here" and instead he offers nothing more than "'gratuitous opinions'…that are not based on his specialized skills…." Id. (quoting Hall, 93 F.3d at 1343); see Mid-State Fertilizer Co. v.

3

Exchange Nat. Bank of Chicago, 877 F.2d 1333, 1340 (7th Cir. 1989) ("Judges should not be buffaloed by unreasoned expert opinions."). In other words, the trier of fact is more than capable of determining whether the Plaintiffs were free from 3PD's control, whether the Plaintiffs performed work outside the usual course or places of business of 3PD, and whether the Plaintiffs were engaged in an independently established trade, occupation, or business. For all of these reasons, this Court should exclude the testimony of Robert Crandall.

I.     ARGUMENT

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993); see Niebur, 136 F.Supp.2d at 918 ("The Daubert standard applies to all expert testimony, 'whether it relates to areas of traditional scientific competence or whether [as here] it is founded on…other technical or specialized expertise.'") (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999). "District court judges have broad discretion in ruling on evidentiary questions presented before trial on motions in limine." Thomas v. Sheahan, 514 F.Supp.2d 1083, 1087 (N.D.Ill. 2007) (citing Jenkins v. Chrysler Motors Corp., 316 F.3d 663, 664 (7th Cir. 2002)). The proponent of the admission of expert testimony bears the ultimate burden of establishing that the testimony is admissible by a preponderance of the evidence. Daubert, 509 U.S. at 592 (holding that the admissibility of expert scientific testimony must be determined pursuant to FRE 104(a)); Kumho, 526 U.S. at 153 (applying the Daubert factors to non-scientific expert testimony); Bourjaily v. United States, 483 U.S. 171, 175 (1987) ("The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration).

### 1. CRANDALL'S TESTIMONY CONSISTS OF BARE LEGAL CONCLUSIONS AND THEREFORE DOES NOT ASSIST THE TRIER OF FACT AS REQUIRED UNDER RULE 702.

3PD seeks to offer testimony by Robert Crandall, not to shed light on relevant facts, but to offer bare legal conclusions that bolster its own legal argument. However, testimony by an expert witness that constitutes an opinion or legal conclusion on issues that will determine the outcome of a case is inadmissible under FRE 702. Thomas v. Sheahan, 514 F.Supp.2d 1083, 1094 (N.D.Ill. 2007) ("Expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible.") (citing Good Shepherd Manor Found., Inc. v. City of Momence, 323 F.3d 557, 564 (7th Cir. 2003) and U.S. v. Caputo, 382 F.Supp.2d 1045, 1049 (N.D.Ill. 2005) ("An expert witness cannot offer an opinion on what the law requires or permits because the judge, not the witnesses, instructs the jury about the relevant law.").[2] This is because "it is not for witnesses to instruct the jury as to applicable principles of law, but the judge." Panter v. Marshall Field & Co., 646 F.2d 271, 294 n.6 (7th Cir. 1981); see also CDX Liquidating Trust ex rel. CDX Liquidating Trustee v. Venrock Assoc., 411 B.R. 571, 585 (N.D.Ill. 2009) ("[t]estimony purporting to detail the controlling legal standards does not assist the jury….").

In Old Republic Ins. Co. v. Ness, Motley, Loadhold, Richardson & Pool, P.A., 2006 WL 3782994, *2 (N.D.Ill. 2006), the court held that expert testimony by a professor was inadmissible because his expert report was "more like a litigant's submission to the court" than an actual expert report:

> Not only does Professor Finkel's written report on the issue set forth what he believes the relevant law to be, which is the court's role when it instructs the jury, but he sets forth

---

[2] While it is true that "Rule 704 abolished the ultimate issue objection, which had prohibited witnesses from expressing opinions upon ultimate issues," nonetheless "Rule 704 … does not provide that witnesses' opinions as to the legal implications of conduct are admissible." U.S. v. Baskes, 649 F.2d 471, 479 (7th Cir. 1980) (upholding a district court decision to exclude testimony concerning the legality of the defendant's conduct).

what the legal conclusion should be based on the law and facts that he describes, which is the jury's role.

And in Perkins v. Southern New England Tel. Co., 2011 WL 336715, *3-4 (D.Conn. 2011), the court excluded expert testimony in an FLSA overtime case in which the expert purported to testify as to whether the "primary duty" of the plaintiffs' job positions were "management." The court noted that "[t]his characterization of plaintiffs' duties appears to be taken directly from the FLSA, which exempts individuals, whose 'primary duty is management,' from its overtime requirements." Id. at *3 (quoting 29 C.F.R. § 514.100(a)). However, whether the plaintiffs' primary job duties were management was the issue for the jury to decide, and "[b]efore a jury makes such a decision, this court will need to carefully explain the legal definition of both 'primary duty' and 'management.'" Id. Since the expert performed her own weighing of the evidence, she impermissibly "usurp[ed] a judge's role in explaining the relevant factors" as well as "the jury's role in determining which factors are more important to it in reaching a final determination." Id. at 4.

In the employment misclassification context, 3PD is not the first delivery company to attempt to use expert testimony to fight claims that it misclassified its delivery drivers as independent contractors. In Scovil v. FedEx Ground Package Sys., Inc., 2012 WL 10181062, *1 (D.Me. 2012), the court granted the plaintiff's motion to exclude two experts that FedEx sought to introduce; one expert purported to explain "why [FedEx] exerts control over its drivers," while the other expert purported to explain "what safety regulations require and what other motor carriers do." The court held that the experts' testimony was "not relevant to the issue whether the drivers are independent contractors or employees." Id. The court also held that even if the reason for control over its drivers were relevant, "it is factual testimony that could be given by [FedEx's] personnel, and there is no need for expert testimony about it." Id.

6

Likewise, in Bostic v. Connor, 524 N.E.2d 881, 885-886 (Oh. 1988), the court rejected an employer's attempt to introduce expert testimony to explain "the character of [the plaintiff's] employment [as a truck driver] for the [defendant]." While noting that "testimony on an ultimate issue to be decided by the trier of fact is not *per se* inadmissible," the court found expert testimony on whether the defendant had the right to control the plaintiff in his work as a truck driver was simply not necessary:

> The jury in this case was quite capable of understanding the instructions and of reaching a correct conclusion without the assistance of [the defendant's] expert. Although the ultimate issue of [the plaintiff's] relationship to [the defendant] was a difficult one to decide, the jury did not require any technical or specialized testimony by appellant's expert to understand the distinctions between an employee and an independent contractor.

Id. at 886.

Interestingly, in In re FedEx Ground Package Sys., Inc. Employ. Practices Litig., 2010 WL 1838400, *4-5 (N.D.Ind. 2010), the tables were turned when the plaintiffs – delivery drivers alleging that they were misclassified as independent contractors – sought to introduce expert testimony to establish that the defendant exerted extensive control over the plaintiffs under their contracts. The court held that the expert testimony was inadmissible, because "[w]hether the contract allows FedEx to control the manner and means of the work is a legal question for the court and isn't the proper subject of expert testimony." Id. at 5.

Here, the central <u>legal</u> question is whether the Plaintiffs are employees under the IWPCA, or whether 3PD can establish all three prongs of the narrow exception to the presumption of employee-status set forth in 820 Ill. Comp. Stat. 115/2. The Illinois Supreme Court has explicitly held that:

> the three statutory requirements for independent contractor status…(freedom from control and direction, performance of services outside the usual course or places of business, and establishment of an independent business) are comprised of legal terms and concepts requiring interpretation."

7

AFM Messenger Service, Inc., 198 Ill.2d at 392.[3] Thus, it is the duty of the judge, not an expert witness, to instruct the jury on the proper legal standard for analyzing each prong of the test. Yet 3PD seeks to introduce expert testimony by Crandall to assert that:

> [t]o test whether a contractor is operating a business, one can compare the Contractor's business model to four criteria that are common to business: 1) the requirement for capital investment; 2) the opportunity to expand; 3) the opportunity to generate profits and losses through the hiring of others; and 4) the opportunity to generate profit, loss, and changes in equity value through managerial decisions.

Crandall Report at 3. Then, just like the professor in Old Republic Ins. Co., 2006 WL 3782994, *2, who impermissibly "set[] forth what the legal conclusion should be based on the law and facts that he describe[d]," Crandall goes on to make the purely legal conclusion that "the Contractor business model meets the four basic criteria of a business…." Crandall Report at 6. Given that the Illinois Supreme Court has unequivocally held that the three-prong statutory test for determining employment status is "comprised of legal terms and concepts requiring interpretation," AFM Messenger Service, Inc., 198 Ill.2d. at 392, Crandall's testimony about the right of control and the existence of a "business" impermissibly asserts pure legal conclusions that are inadmissible under FRE 702. See Mid-State Fertilizer Co. v. Exchange Nat. Bank of Chicago, 877 F.2d 1333, 1340 (7th Cir. 1989) (refusing to admit expert testimony by an economist who simply "examined materials produced in discovery and drew inferences from the record, speaking in legal rather than economic terms. He gave a legal rather than an economic opinion.") (Easterbrook, J.).

---

[3] Although the Illinois Supreme Court in AFM Messenger Service, Inc., 198 Ill.2d at 392, was interpreting the Illinois Unemployment Insurance Act, the statutory language is identical in the IWPCA, and Illinois courts regularly treat judicial precedent interpreting the Unemployment Insurance Act as instructive in decisions involving the IWPCA. Novakivac, 354 Ill. App. 3d at 668 (applying court rulings interpreting the Unemployment Act to claims brought under the IWPCA for the purpose of determining employment status); Anderson v. First Am. Grp. of Companies, Inc., 353 Ill. App. 3d 403, 409 (Ill. App. Ct. 2004) (same).

### 2. CRANDALL'S TESTIMONY DOES NOT RELATE TO ANY OF THE STATUTORY FACTORS FOR DETERMINING PLAINTIFFS' EMPLOYMENT STATUS AND THEREFORE IT SHOULD BE EXCLUDED.

Crandall's testimony does not relate to "any fact that is of consequence to the determination of the action" under FRE 401, therefore his testimony cannot possibly "help the trier of fact to understand the evidence or to determine a fact in issue." FRE 702; see Daubert, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 Weinstein & Berger ¶ 702[02], p. 702–18). Here, the central question on which Crandall purports to shed light is whether the Plaintiffs are employees or independent contractors of 3PD. The IWPCA defines an "employee" broadly to include "any individual permitted to work by an employer in an occupation," and excludes only an individual:

> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and
>
> (2) who performs work which is either outside the usual course of business or is performed outside of all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and
>
> (3) who is in an independently established trade, occupation, profession, or business.

By its plain terms, this test is conjunctive. AFM Messenger Svc., Inc. v. Dept. of Employ. Sec., 198 Ill.2d 380, 397 (2001). Accordingly, 3PD's drivers are employees under the IWPCA unless 3PD can satisfy all three prongs. See 56 Ill. Admin. Code § 300.460(a) ("all three conditions enumerated in Section 2 of the [IWPCA] must be satisfied for the independent contractor exemption to apply."). In applying the three-pronged test, courts must look at the actual circumstances of the relationship between the parties; neither the "designations and terminology used by the parties" nor the worker's tax status are controlling. 56 Ill. Admin. Code § 300.460(c).

As set forth below, Crandall's testimony is irrelevant to the Plaintiffs' employment status under all three statutory prongs.

### A. Prong One: Whether the Plaintiffs Were Free from Control Both Under Contract and In Fact.

Prong one of the IWPCA test for employment status examines whether the Plaintiffs have been "free from control and direction over the performance of [their] work, both under…contract of service with his employer and in fact…." 820 Ill. Comp. Stat. 115/2. Crandall's testimony concerning the Plaintiffs' freedom to make decisions relates almost entirely to mundane day-to-day decisions such as which road to take while making a delivery, where to refuel, or when to perform vehicle maintenance. Crandall Report at 5 (¶ 9).[4] Yet the law is clear that such mundane decisions <u>are not evidence of control</u> for purposes of the three-prong test for employment status: "'Control' means the existence of general control or right to general control, even though the details of work are left to an individual's judgment." 56 Ill. Adm. Code § 300.460(a)(1). Therefore, Crandall's testimony is irrelevant to this Court's analysis under prong one, and is inadmissible under FRE 702 and 401.

### B. Prong Two: Whether the Plaintiffs Performed Their Delivery Work Outside the Usual Course of Business of 3PD or Outside All Places of Business of 3PD.

Prong two of the IWPCA test for employment status presents the very narrow issue of whether the Plaintiffs "perform[ed] work which [was] either outside the usual course of business or [was] performed outside of all of the places of business of the employer." 820 Ill. Comp. Stat. 115/2. When considering an employer's usual course of business, Illinois courts focus on whether a worker performs services that are necessary to the business of the employer or services that are merely incidental. <u>Carpetland U.S.A. Inc., v. Ill. Dept. of Employ. Sec.</u>, 201 Ill.2d 351, 386 (2002). And when considering an employer's "places of business," courts include "any location where workers regularly represent an employer's interest." <u>In re Fedex Ground Package Sys., Inc.</u>, 2010 WL 2243246, at *1 (applying Illinois law and quoting <u>Novakovic v. Samutin</u>, 354 Ill. App. 3d 660, 669 (Ill. App. Ct. 2004) (citing <u>Carpetland U.S.A.</u>, 201 Ill. 2d at 391)). "Illinois courts have used this rationale when a worker was assigned to a

---

[4] Other day-to-day decisions that Crandall identifies, such as whether to lease or purchase a truck, are also irrelevant, because if the Plaintiffs are employees under the IWPCA, 3PD violated the law by requiring the Plaintiffs to pay out of their own pockets for such expenses. 3PD cannot be permitted to benefit from its own unlawful practices.

10

specific geographic area, such as a sales territory or delivery route." Id. (citing Carpetland U.S.A., Inc., 201 Ill. 2d at 391).

Nothing in the Crandall report even purports to relate to the analysis of the Plaintiffs' status as employees under prong two of the IWPCA's test for employment status. Whether the Plaintiffs had any capital investment or the opportunity to expand and generate profits and losses does not speak to the nature of the services the Plaintiffs performed and whether those services were "either outside the usual course of business or [was] performed outside of all of the places of business of [3PD]." 820 Ill. Comp. Stat. 115/2. Therefore, Crandall's testimony will not "help the trier of fact to understand the evidence or to determine a fact in issue" under FRE 702 and is therefore inadmissible.

### C. Prong Three: Whether the Plaintiffs Were Engaged in an Independently Established Trade, Occupation, Profession, or Business.

Finally, prong three of the IWPCA test for employment status presents the very narrow issue of whether the Plaintiffs were engaged "in an independently established trade, occupation, profession or business." 820 Ill. Comp. Stat. 115/2. The Illinois Supreme Court has stated that "the test for an independently established business…is that the employee's 'business' be capable of operation without hindrance from any other individual." AFM Messenger Service, 198 Ill.2d at 400-401. The question is not simply whether the Plaintiffs were able to perform the same delivery services for another company, because "[s]uch other relationships may simply have been…part-time employment." Id. at 401 (citing Jack Bradley, Inc. v. Dept. of Employ. Sec., 146 Ill.2d 61, 80 (1991)). Rather, the focus is of the inquiry is whether the Plaintiffs "were able to operate their 'delivery businesses' without the benefit of a relationship with [3PD], or another…company like [3PD]." Id.; see also Veterans Messenger Serv., Inc. v. Jordan, 393 Ill. App. 3d 715, 722 (2009) (holding that a delivery company failed to meet prong three because it presented no evidence that its "couriers could operate their delivery services without the solicitation of customers by [the company] or another similarly situated 'delivery brokerage service.'

11

Here, the Crandall report does not address whether the Plaintiffs were able to operate their purported "delivery businesses" without the benefit of their relationship with 3PD, or another so-called delivery brokerage service like 3PD. Instead, the Crandall report mistakenly focuses on entirely irrelevant considerations such as whether the Plaintiffs purchased their own trucks, whether the Plaintiffs "could expand their relationship with 3PD by adding additional trucks," or whether the Plaintiffs could make more or less money depending on whether they lease a truck or purchase it outright. Crandall Report at 3-5. But the Plaintiffs' ability to procure more work with 3PD (or a similar entity) does not in any way relate to their ability to operate a delivery business without relying entirely on 3PD. Likewise, Crandall's "comparison of [Plaintiffs'] businesses to other small businesses in the United States" is equally irrelevant under the prong three analysis set forth by the Illinois Supreme Court. Id. at 12. For example, Crandall asserts in his report that the typical small business in the United States does not have any employees, and that "firms operating in the transportation industry were less likely to have employees as compared to firms in the economy overall." Id. But in no way are the employment practices of other entities relevant to a determination of whether the Plaintiffs depended on 3PD for their work.[5] For these reasons, the testimony of Robert Crandall is irrelevant and inadmissible under FRE 702 and 401.

3. **CRANDALL'S ASSESSMENT OF THE FACTS IN THIS CASE IMPROPERLY PLACES AN EXPERT GLOSS ON MATTERS OF COMMON SENSE FOR WHICH NO EXPERT TESTIMONY IS NECESSARY.**

In addition to making impermissible legal conclusions and applying irrelevant criteria for determining whether the Plaintiffs qualify as employees under the three-prong statutory test set forth in the IWPCA, 820 Ill. Comp. Stat. 115/2, Crandall's expert testimony should be excluded because it consists of nothing more than a common sense analysis of simple facts that is well within the ability and understanding of the average layperson. "Expert testimony must be

---

[5] Crandall also asserts that the Plaintiffs earned more "revenues…than most small businesses in the U.S." Id. at 13. Yet how much an individual earns from a putative employer is irrelevant for determining whether the individual is engaged in an independently established business. If anything, such revenues show that the Plaintiffs depended entirely on 3PD for their livelihoods.

helpful to the jury to be admissible." United States v. Christian, 673 F.3d 702, 710 (7th Cir. 2012). "Expert testimony does not assist the jury where the jury has no need for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic." Id. quoting 29 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure § 6264 (1997); see Hall, 93 F.3d at 1343 (recognizing that in certain circumstances "it may be more difficult…to distinguish between testimony that reflects genuine expertise—a reliable body of genuine specialized knowledge—and something that is nothing more than fancy phrases for common sense."). "In other words, a witness should not be allowed to put an 'expert gloss' on a conclusion that the jurors should draw themselves." Id. (citing United States v. York, 572 F.3d 415, 420 (7th Cir. 2009) ("'Interpretations' of unambiguous words or phrases that are plainly within the jury's understanding are unlikely to be admissible under Rule 702.").

Here, Crandall's personal opinion that the Plaintiffs operated a "business" is founded on nothing more than very basic facts that are well within the ability of any layperson to comprehend without the assistance of an expert. For example, Crandall asserts that:

- the Plaintiffs' ability to purchase vehicles suggests they operate a business, Crandall Report at 4;

- the Plaintiffs' ability to add additional trucks and hire others suggests they "have the opportunity to expand their business" and can profit in doing so, id.;

- the Plaintiffs can increase their revenue by making decisions such as "whether to purchase or lease their trucks," "negotiating delivery prices," and "where and when to refuel and perform maintenance on their vehicles," id. at 5

- a hypothetical driver who "could have made a profit of $5,000" but due to "poor business decisions" only made $1,000 "lost $4,000 because of his or her poor decisions," id. at 5-6;

- employers generally do not pay more than the market rate for labor, therefore employees usually cannot profit by hiring another worker to perform their work, id. at 8;

13

- "[f]rom a common sense perspective, there are a variety of other reasons why an employee cannot hire another to perform their job duties and then profit from the difference in wages….," id.;

- choosing which roads to take while delivering a package can affect the cost of making the delivery, id. at 10;

- in order to understand that a hypothetical business owner who hires a worker to drive a vehicle at $120/day will realize a smaller profit than if the same business owner drove the vehicle him or herself, yet Crandall id. at 11;

One does not need to be an expert in business and hold an M.B.A. to make the conclusions that Crandall makes in his expert report. Regardless of whether Crandall's experience could, in other cases, enable him to assist a jury to understand some aspect of the transportation industry or business in general, "he does not attempt to do so here" and instead he offers nothing more than "'gratuitous opinions'…that are not based on his specialized skills…." Niebur, 136 F.Supp.2d at 919 (quoting Hall, 93 F.3d at 1343); see Mid-State Fertilizer Co., 877 F.2d at 1340 (excluding testimony by an economist who "offered his CV rather than his economic skills."). Therefore, Crandall's testimony is will not serve to "help the trier of fact to understand the evidence or to determine a fact in issue" as required by FRE 702(a), and his testimony should be excluded.

## II.     CONCLUSION

For the reasons set forth above, this Court should exercise its broad discretion to hold that Robert Crandall's expert testimony is inadmissible because it is irrelevant to the statutory criteria for establishing employment status for purposes of the IWPCA, it impermissibly asserts bald legal conclusions, and it is nothing more than a gratuitous, common sense opinion based on simple facts that does not assist the trier of fact.

DATED: February 14, 2014    Respectfully Submitted,

MARVIN BRANDON, RAFAEL AGUILERA, ALDO MEDEZ-ETZIG, individually and on behalf of all others similarly situated,

By their attorneys

/s/ Harold L. Lichten
Harold L. Lichten, BBO# 549689
Benjamin J. Weber, BBO# 673736
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

Alejandro Caffarelli, #06239078
Marc J. Siegel, #06238100
Bradley Manewith, #06280535
Caffarelli & Siegel Ltd.
Two Prudential Plaza
180 N. Stetson, Ste. 3150
Chicago, IL 60601
Tel. (312) 540-1230
Fax (312) 540-1231

DATED: February 14, 2014    Respectfully Submitted,

MARVIN BRANDON, RAFAEL AGUILERA, ALDO MEDEZ-ETZIG, individually and on behalf of all others similarly situated,

By their attorneys

/s/ Harold L. Lichten
Harold L. Lichten, BBO# 549689
Benjamin J. Weber, BBO# 673736
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

Alejandro Caffarelli, #06239078
Marc J. Siegel, #06238100
Bradley Manewith, #06280535
Caffarelli & Siegel Ltd.
Two Prudential Plaza
180 N. Stetson, Ste. 3150
Chicago, IL 60601
Tel. (312) 540-1230
Fax (312) 540-1231

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he served a copy of the attached document, **Plaintiffs Motion in Limine to Exclude the Expert Testimony of Robert Crandall**, to the individuals listed below by electronically filing the same with the Clerk of the U.S. District Court of the Northern District of Illinois on February 14, 2014:

Robert L. Browning
James T Spolyar
Scopelitis, Garvin, Light & Hanson & Feary, P.C.
10 West Market Street, Suite 1500
Indianapolis, IN 46204

Adam Carl Smedstad
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
30 W Monroe Street, Suite 600
Chicago, IL 60603


/s/ Harold L. Lichten
Attorney for Plaintiffs