**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARVIN BRANDON, RAFAEL AGUILERA, ALDO MENDEZ-ETZIG, individually and on behalf of all other similarly situated, | |
| Plaintiffs, | Case No. 13-CV-3745 |
| v. | **Judge Ronald A. Guzman** |
| 3PD, INC., | Magistrate Judge Geraldine Soat Brown |
| Defendant. | |

**PLAINTIFFS' ASSENTED-TO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PERMISSION TO SEND NOTICES TO CLASS MEMBERS**

I.     **INTRODUCTION**

This case has been brought as a Rule 23 Class Action on behalf of persons who provided delivery and installation services within Illinois for Defendant 3PD, Inc. ("3PD") between January 1, 2008 and the present.  In August 2013, 3PD was acquired by XPO Logistics, Inc. Subsequently, 3PD's name was changed to XPO Last Mile, Inc. d/b/a XPO Logistics ("XPO"). Plaintiffs' primary claim is that they were misclassified as independent contractors pursuant to the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 et seq. The named Plaintiffs further allege that as a result of this misclassification, XPO violated the IWCPA by making unlawful deductions from their delivery service providers' pay.  Plaintiffs also brought claims under the Illinois common law for unjust enrichment.[1]

_____

[1]     Plaintiff Aldo Mendez-Etzig further brought an individual claim for retaliation against 3PD.

On October 20, 2014, this Court granted Plaintiffs' motion for class certification under Fed. R. Civ. P. 23(c)(4) with respect to the issue of whether XPO could demonstrate the requirements of 820 Ill. Comp. Stat. § 115/2(2). ECF No. 84. The Court defined the class as follows: "all persons who entered into a Delivery Services Agreement individually or on behalf of another entity, and personally provided delivery services pursuant to that Agreement for 3PD [XPO] in the State of Illinois." Order at 3 (ECF No. 84). Notice was sent to the class on approximately November 26, 2014. The parties stipulated that the starting date for the class is January 1, 2008. ECF No. 83.

On January 12, 2015, the parties attended a full-day mediation with experienced wage and hour mediator Michael Loeb. The case did not settle at the mediation, and the parties continued to prepare for trial and continued submitting briefs to the Court.

On February 13, 2015, XPO moved for summary judgment, arguing that Plaintiffs were not employees of XPO under the IWPCA and, even if they were, Plaintiffs' claims were preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501. ECF No. 93. On March 6, 2015, Plaintiffs filed their opposition to XPO's motion and moved for partial summary judgment on Plaintiffs' claims that deductions XPO made from their pay violated the IWPCA. ECF No. 97-98. These motions have been fully briefed and are still pending.

The parties continued to negotiate with the assistance of Mediator Loeb and recently reached a proposed settlement of this case. The total amount of the proposed settlement is $2.8 million ($2,800,000) (the "Settlement Class Fund").

Plaintiffs hereby request that the Court grant preliminary approval of this settlement pursuant to Fed. R. Civ. P. 23(e) and, in accordance with appropriate class action settlement

2

procedures, allow Plaintiffs to send the attached Notices and Claim Forms to members of the class certified by this Court in October 2014 ("Settlement Class Members") informing them of the settlement and how they may make a claim for a share of the Net Settlement Amount, which is the Settlement Class Fund less Class Counsel fees, expenses, and incentive payments, or opt out of the settlement if they would prefer not to be bound by it. A copy of the proposed Notice is attached to this motion as Exhibit A, and a copy of the proposed Claim Form is attached to this motion as Exhibit B.

Plaintiffs also request that this Court schedule a final fairness hearing approximately 70 days after this motion has been filed, at which time Plaintiffs will report to the Court regarding the results of the notice process, including the number of claims submitted and whether any Settlement Class Members have objected to the settlement. The Net Settlement Amount would then be distributed to Settlement Class Members in accordance with the terms of the settlement.

There are significant litigation risks on the part of the Settlement Class Members, which counsel recognizes. For example, the FAAAA may preempt their claims and evidentiary challenges related to providing damages exist.

As described herein, this settlement is a fair resolution of the claims the Plaintiffs have raised against XPO. All proceeds of the settlement will be distributed to Settlement Class Members, or for attorneys' fees, expenses, and incentive payments, as described below. The Court should therefore grant preliminary approval of this proposed settlement and allow Plaintiffs to send the attached notice to Settlement Class Members, and schedule a final approval hearing as described above.

3

## II.     TERMS OF THE FINANCIAL SETTLEMENT

The total settlement amount is $2,800,000.  Based upon the data provided by XPO the class has approximately 250 members and Plaintiffs' counsel believe that the financial settlement will provide reasonable compensation to the Settlement Class Members for the alleged wrongs they have suffered.

The settlement is non-reversionary, meaning that any unclaimed shares will be redistributed to the Settlement Class Members who submit a timely and valid Claim Form ("Class Claimants").  Settlement checks that are not cashed, after claims are made, will be paid to a *cy pres* beneficiary, Working Hands Legal Clinic.

The parties propose that, if approved by the Court, the Settlement Class Fund of $2,800,000.00 shall be used to:

1.     Pay incentive payments to the three individual Class Representatives who actively participated in the litigation and assisted Class Counsel as follows: $20,000 each to Rafael Aguilera and Aldo Mendez-Etzig, and $10,000 to Marvin Brandon for a total of $46,000.

2.     Pay $5,000 to resolve Plaintiff Mendez-Etzig's individual claim for retaliation.

3.     Pay to Class Counsel an amount not to exceed one-third of the Settlement Class Fund for attorney's fees, litigation and mediation expenses and costs of administering the settlement for a total of $933,000.  The remainder of the Class Settlement Fund after payments under Sections 1, 2, and 3 will be referred to as the "Net Settlement Amount."

4.     From the Net Settlement Amount, totaling $1,812,000, pay the claims of the Class Claimants.

### III.     PROCEDURES AND FORMULA FOR DISTRIBUTION OF THE CLASS FUNDS

If this Court gives preliminary approval to the proposed settlement, the settlement administration will be conducted by Class Counsel's law firm, Lichten and Liss-Riordan, P.C., which maintains an in-house staff and electronic systems designed for that purpose. This will save thousands of dollars by not utilizing a class action administration firm. A notice will be sent to each Settlement Class Member informing them of the settlement, how they can share in the distribution, and of their right to participate in the Net Settlement Amount, object to the settlement, or opt out of the settlement. See Proposed Notice Form (attached as Ex. A). The notice will also inform individuals that this settlement will settle all IWPCA claims that they may have had against XPO up until the effective date of the proposed Settlement Agreement and Release of Claims ("Settlement Agreement"), which is attached to this motion as Exhibit C.[2]

Settlement Class Members will also receive a Claim Form, which must be signed by the Settlement Class Member to take part in the settlement. See Proposed Claim Form (attached as Ex. B). The notice will request that class members return their Claim Forms within 45 days.

If notices and claim forms come back as undeliverable at the address provided, Class Counsel will, using software they have purchased, attempt to obtain more accurate addresses for those individuals, and will resend the notices. Although the notice will inform individuals that

---

[2]     The parties have agreed that the Settlement Class will be limited to the individuals who were part of the class when it was certified in October 2014 and were sent class notice and those individuals who signed delivery service agreements and personally provided delivery services in Illinois for XPO following XPO Logistics, Inc.'s acquisition of 3PD in August 2013. XPO will produce a list of the Settlement Class members to Class Counsel pursuant to this agreement so as to include carriers who have signed delivery service agreements with XPO, subject to the above-mentioned limitation, from November 2014 up to the present. XPO has indicated that this will add 21 individuals to the class.

they must return their claim form within 45 days to be eligible for a share, in fact, the parties agree that any individual who files a valid Claim Form up until five days before the Settlement Class Fund is set to be distributed will be eligible to receive a share.

Further, the settlement is non-reversionary – meaning that to the extent that there are unclaimed shares or class members who are not ultimately found, any remaining amounts will be redistributed to those class members making claims. Should there be some unpaid money as a result of checks not being cashed, such remaining funds will go to a *cy pres* beneficiary, Working Hands Legal Clinic.

Plaintiffs asserted that, as a result their misclassification, they were forced by Defendants to pay back some of their earned pay through deductions and expenses that should have been borne by their employers and that they were not paid for all hours worked. With that in mind, the Net Settlement Amount will be allocated to Class Claimants as follows:

XPO will provide Plaintiffs' counsel with data listing the deductions made from each carrier during the class period. XPO will update this deduction data if necessary. The Net Settlement Amount ($1,812,000) will be distributed to the Class Claimants based on their actual deductions on a pro rata basis.

XPO will deposit the Settlement Class Fund of $2,800,000 with Class Counsel within 14 days of the effective date of the Settlement Agreement. As discussed above, after attorney's fees and incentive payment are allocated, the remaining $1,812,000 will be divided among the Class Claimants and be distributed in two payments. The Net Settlement Amount ($1,812,000) will be divided among Class Claimants as follows. Based on information provided by XPO and responses to the Notice of the settlement, Class Counsel will determine the dates of service and amount of deductions from each Class Claimant's pay during the class period. Class Claimants

will then receive a pro rata share based on their days of service with a multiplier for those contractors who had the most deductions. Class Claimants will be divided into tiers based on their total deductions: Class Claimants in the top tier (those with the top one-third of deductions) will receive a multiplier of their days of service of 1.4, Class Claimants in the second tier (those with the next highest one-third of deductions) will receive a multiplier of their days of service of 1.2, and Class Claimants in the third tier (those with the lowest one-third of deductions) will receive a multiplier of 1.0.

Approximately 14 days after the Settlement Class Fund is deposited, and after attorney's fees and incentive payments are deducted, Class Claimants will be mailed shares of the settlement distributions in the amount they would have received if all Settlement Class Members had returned Claim Forms prior to the expiration of 60 days following the date on which Class Counsel first mails Class Notice to the Settlement Class Members ("Claims Deadline").

A second distribution will be made 45 days later as follows: Settlement Class Members who did not submit Claim Forms until after the first distribution shall receive the amount they would have been entitled to in the initial distribution provided that Class Counsel agrees to do so with Defense Counsel's consent. Class Claimants who received an initial distribution shall receive an amount that allows them to receive their complete Individual Settlement Amount.

No Settlement Class Member shall receive a disbursement more than 250 percent of the average payment from the Net Settlement Amount.

### IV. ATTORNEY'S FEES, COSTS, CLASS ACTION ADMINISTRATION AND INCENTIVE PAYMENTS

Class Counsel propose, and XPO agrees not to object to the proposal, that one-third ($933,000) of the Settlement Class Fund be set aside for the payment of attorneys' fees, costs,

including the costs of mediation, and administration of the class settlement. Class Counsel will administer the settlement in-house, thereby saving the Settlement Class Members thousands of dollars that would be needed if a class action administration firm were used. Class Counsel believes that the requested fee is fair, appropriate, and in line with multiple other similar settlements. In addition, Class Counsel asks the court to approve incentive payments of $20,000 each for named Plaintiffs Aguilera and Mendez-Etzig, and an incentive payment of $10,000 for named Plaintiff Brandon.  All participated actively throughout this litigation, including providing information leading to the filing of the lawsuit, providing discovery responses, and attending day-long depositions.

> ### V. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THEREFORE, SHOULD BE PRELIMINARILY APPROVED

### A. The Legal Standard for Preliminary Settlement Approval

It is well-established that courts favor settlements of lawsuits over continued litigation. See, e.g., Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996); Air Line Stewards and Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc., 630 F.2d 1164, 1166 (7th Cir. 1980) (providing that federal courts look with great favor upon the voluntary resolution of litigation through settlement); Armstrong v. Bd. of Sch. Directors of City of Milwaukee, 616 F.2d 305, 313 (7th Cir. 1980) overruled on other grounds ("In the class action context in particular, 'there is an overriding public interest in favor of settlement.'") (quoting Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977); In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004) ("an overriding public interest in settling class action litigation, and it should therefore be encouraged").

Pursuant to Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Before granting approval, a court should weigh whether "the proposed settlement is lawful, fair, reasonable, and adequate." Isby, 75 F.3d at 1196. Courts should "not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness" and should consider the facts "in the light most favorable to the settlement." Id. at 1199 (quoting EEOC v. Hiram Walker & Sons, Inc., 768 F.2d 884, 889 (7th Cir. 1985)). Furthermore, the decision of whether to approve a proposed settlement is left to the discretion of this Court. Wong v. Accretive Health, Inc., 773 F.3d 859, 862 (7th Cir. 2014).

Ultimately, when conducting a fairness determination, the relevant factors include: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." Id. at 863-64 (quoting Gautreaux v. Pierce, 690 F.2d 616, 631 (7th Cir.1982). "The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." Id. (quoting In re Gen. Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1132 n. 44 (7th Cir.1979)). Generally, "when sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996) (citation omitted). Moreover, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."

9

Burkholder v. City of Ft. Wayne, 750 F.Supp.2d 990, 995 (N.D. Ind. 2010 (quoting Carter v. Anderson Merchandisers, LP, 2010 WL 144067, at *6 (C.D.Cal. Jan. 7, 2010)).

Review of a proposed class settlement involves two steps: preliminary approval and a final "fairness hearing." Manual for Complex Litigation (Fourth) § 13.14. At the preliminary approval stage, "the court's task is merely to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc., 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) (quoting Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee, 616 F.2d 305, 314 (7th Cir.1980) (noting that at the final fairness hearing, the court will "adduce all information necessary to enable [it] intelligently to rule on whether the proposed settlement is fair, reasonable, and adequate") (citing In re Prudential Sec. Inc. Ltd. P'ships Litig., 163 F.R.D. 200, 209 (S.D.N.Y.1995) (preliminary approval determines whether the settlement is "possibly fair, reasonable, and adequate")). Thus, "courts in this district have performed 'a more summary version' of the final fairness inquiry at the preliminary approval stage." Am. Int'l Grp., Inc., 2011 WL 3290302, at *6 (citing AT & T Mobility Wireless Data Servs. Sales Litig., 270 F.R.D. 330, 346 (N.D.Ill.2010); Kessler v. Am. Resorts Int'l's Holiday Network, Ltd., 2007 WL 4105204, at *5 (N.D.Ill. Nov.14, 2007) ("Although this [fair, reasonable, and adequate] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase."). The court's role at the preliminary approval stage is not "resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." E.E.O.C. v. Hiram Walker & Sons, Inc.,

10

768 F.2d 884, 889 (7th Cir.1985).  Indeed, Courts are "entitled to rely heavily on the opinion of competent counsel." Gautreaux, 690 F.2d at 634 (7th Cir.1982).

Once a settlement is preliminarily approved by the Court, notice of the proposed settlement and the fairness hearing is provided to class members. At the subsequent fairness hearing, class members may formally object to the proposed settlement.

**B.     The Proposed Settlement Satisfies the Requirements for Preliminary Approval**

Plaintiffs allege that they and the members of the class were misclassified as independent contractors under the IWPCA, and that as a result XPO took unlawful deductions from their pay. Pursuant to the IWPCA, 820 Ill. Comp. Stat. 115/9, the contractors are presumed to be XPO's employees unless XPO is able to prove each of the following: (1) the contractors are free from XPO's control; (2) the contractors perform work outside XPO's usual course of business or outside of all of the Company's places of business, and (c) the contractors are engaged in an independently established business.  It is Plaintiffs' position that they performed XPO's core business – delivering merchandise for the company's large retail customers – and thus XPO cannot meet the second prong of the IWPCA's independent contractor test.  Plaintiffs also alleged that XPO cannot meet prongs one or three.

Although the Plaintiffs believe that they have strong and meritorious claims, several concerns have led Plaintiffs' counsel to conclude that a settlement with XPO is preferable to a judgment on the merits.  While Plaintiffs believe strongly in their claims for unpaid wages under the IWPCA, XPO has argued that it does not employ Plaintiffs and, even if it did, Plaintiffs claims are preempted by the FAAAA.  The issue of whether the FAAAA preempts wage claims of delivery drivers under the IWPCA is currently pending before the Seventh Circuit in Costello

v. BeavEx, Inc., Appeal Nos. 15-1109, 1110.[3]  The issue has been fully briefed and oral argument was held on September 18, 2015.

Meanwhile, in September 2014, the First Circuit ruled that the FAAAA may preempt at least one prong of a Massachusetts ABC test similar to the test used to determine employment status under the IWPCA as applied to delivery drivers.  Both the IWPCA and the Massachusetts Independent Contractor Law, M.G.L. c. 149, § 148B, use a three-prong test (known as the ABC test) to define who is an employee.  In Massachusetts Delivery Ass'n v. Coakley, 769 F.3d 11, 23 (1st Cir. 2014), the First Circuit held that the FAAAA could preempt prong 2 of the Massachusetts ABC test and this court`s class certification decision is premised on the commonality provided by the prong 2 analysis.

Prior to the MDA decision, four Massachusetts federal district courts had ruled that the FAAAA did not preempt the Massachusetts Independent Contractor Law as applied to delivery companies.  One of those courts held that the FAAAA did not preempt claims against 3PD that are nearly identical to those raised here.  Martins v. 3PD, Inc., No. CIV.A. 11-11313-DPW, 2013 WL 1320454, at *12 (D. Mass. Mar. 28, 2013).

On remand from the MDA decision, the District Court did hold that prong 2 of the Massachusetts test was preempted.  See Massachusetts Delivery Ass'n v. Healey, No. 10-CV-11521, 2015 WL 4111413, at *10 (D. Mass. July 8, 2015) (holding on remand that Prong B of Section 148B was preempted by the FAAAA as applied to same-day delivery service). That decision has been appealed by the Massachusetts Attorney General.

_____

[3] Class counsel also represents the plaintiffs in Costello v. BeavEx, and therefore is imminently familiar with the issues and FAAAA preemption arguments currently pending before the Seventh Circuit.

Even if this Court denied 3PD's motion for summary judgment on FAAAA preemption, Plaintiffs' face the possibility that this issue would wind up before the Seventh Circuit before they could collect any damages.

Furthermore, even if Plaintiffs were found to be employees, and that their claims were not preempted by the FAAAA, there is no certainty that they would be awarded damages under 820 Ill. Comp. Stat. 115/9 for improper deductions. Because there is very little case law on the issue, Plaintiffs face the possibility that they would be found to be employees, but have no recoverable damages.

Based on these considerations, Class Counsel strongly believes that the settlement negotiated here is fair, reasonable, and adequate. Moreover, in reaching this conclusion, Class Counsel have spent considerable time performing calculations and compiling Excel spreadsheets both during the full-day mediation with a highly respected mediator and in direct consultation by themselves. Plaintiffs believe that the total number of contractor class members entitled to a distribution is approximately 250. Thus, the net amount of the settlement fund ($1,812,000 after all costs and fees have been paid) should be sufficient to pay reasonable and significant settlements to the class members who participate in the settlement. It allows Settlement Class Members to obtain compensation immediately, rather than in years.

Furthermore, the procedural background of this matter supports a finding that the Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages to Settlement Class Members. The case presented numerous and vigorously contested issues related to the classification of the Settlement Class Members and whether certain legal defenses provided XPO with a complete or partial defense to liability. The parties engaged in a full-day mediation with a

13

respected mediator which involved extensive informal discovery. The parties conducted extensive formal discovery, including lengthy written discovery and conducting seven depositions. Moreover, the parties have engaged in extensive litigation in this Court since this lawsuit was filed in 2013. Plaintiffs briefed class certification before the magistrate (ECF Nos. 54, 63, 65) and provided responses to the magistrate's report and recommendation that a class be certified (ECF Nos. 78, 82), and each party separately moved for summary judgment (ECF Nos. 93, 98, 108, 115). Plaintiffs' conducted four depositions of XPO managers and XPO deposed all three named plaintiffs.

Plaintiffs are represented by highly experienced and competent counsel who have litigated numerous wage and hour cases aggressively and successfully. Co-lead counsel, Attorney Harold Lichten, has litigated, tried, and settled numerous class action wage-and-hour cases in Massachusetts and across the country and is a recognized expert in labor and employment law.[4] Furthermore, Mr. Lichten's law firm, Lichten & Liss-Riordan, P.C., is a pioneer in the field of worker misclassification and has litigated and settled numerous class action matters filed in the federal courts.[5] Those settlements contained very similar terms to the

_____

[4] Among other things, Mr. Lichten successfully argued the landmark cases on the Massachusetts Independent Contractor Law, Somers v. Converged Access, Inc., 454 Mass. 582 (2009) and the New Jersey wage law, Hargrove v. Sleepy's, LLC, 106 A.3d 449, 453 (N.J. 2015). Both cases dealt with the same ABC employment relationship test included in the IWPCA.

[5] The class cases they have litigated and settled in federal court include: Anderson v. HomeDeliveryAmerica.com, et al., C.A. No. 11-cv-10313 (D. Mass. Dec. 17, 2014) (Doc. #108); Mansingh v. Exel Direct, Inc., C.A. No. 12-11661 (D. Mass. May 7, 2014); Kiely v. TripAdvisor, LLC, C.A. No. 08-11284 (D. Mass. Aug. 8, 2011) (Doc. #52); Apana et al. v. Fairmont Hotels, Inc., C.A. No. 08-cv-00528 (D. Hawaii 2011); Carreiro, et al. v. Huntleigh Corp., et al., C.A. No. 08-10819 (D. Mass.); Elienberg v. RCN, C.A. No. 09-10912 (D. Mass.); Maliniski et al. v. Starwood Hotels, C.A. No. 08-11859 (D. Mass.); Monahan et al. v. WHM

proposed settlement in this case, including the same provision for attorneys' fees and the same basic method for notifying class members and distributing the settlement proceeds.

Attorneys Marc Siegel and Bradley Manewith also have extensive experience with class wage and hour litigation. They both represented workers in over 100 wage and hour cases and were appointed as class counsel by federal courts in numerous class action settlements.[6]

Class Counsel are thus well aware of the law in this area, and their experience has provided the plaintiff class with a high degree of expertise, which contributed to a favorable resolution of their claims against XPO. Furthermore, Mr. Lichten's firm is also experienced in the mechanics of class settlement administration. In the more than 60 other cases the firm has settled as class actions, there have been thousands of class members overall requiring active engagement in processing claims from these settlements and distributing settlement proceeds.

Moreover, the proposed Settlement Agreement between Plaintiffs and XPO, demonstrates that the settlement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages.

---

LLC d/b/a LXR Luxury Resorts and Boca Resorts, Inc. d/b/a Boca Raton Resort & Club, C.A. No. 09-CV-80198 (S.D. Fla.); Hayes et al. v. Aramark Sports Service LLC, C.A. No. 08-10700 (D. Mass.); Niles et al. v. Ruth's Chris Steak House, C.A. No. 08-07700 (S.D.N.Y.); Mitchell et al. v. PrimeFlight Aviation Services, C.A. No. 08-cv-10629 (D. Mass.); Barreda et al. v. Prospect Airport Svcs., C.A. No. 08-323 (N.D. Ill.); Miller et al. v. SBLI, C.A. No. 08-10267 (D. Mass.).

[6]     Attorneys Siegel and Manewith litigated and were appointed class counsel in the following class action settlement in federal court:  Cardenas et al. v. John B. Sanfilippo & Son, Inc., No. 10-CV-01354 (N.D Ill.) ($2.6 Million Settlement); Barreda, et al. v. Prospect Airport Servs., Inc., No. 08 C 03239 (N.D. Ill.); Sanchez, et al. v. Stampede Meat, Inc., et al., No. 02 C 5452 (N.D. Ill.); Singer v. Lockport Beef, LLC, et al., No. 14-cv-0670 (N.D. Ill.); Trevino v. Renaissance Roofing, Inc., et al., No. 12-cv-00024 (N.D. Ill.); Leon v. El-Milagro, Inc., No. 11-cv-04255 (N.D. Ill.); Cardenas, et al. v. John B. Sanfilippo & Son, Inc., No. 10-cv-01354 (N.D. Ill.).

The settlement also proposes incentive payments of up to $20,000 for the Class Representatives. The proposed incentive payments are fair and reasonable, given that the Class Representatives initiated the lawsuit, and it was through their initiative that this recovery was obtained. The Class Representatives provided invaluable assistance to Class Counsel over the course of four years, including providing documents, responding to discovery, and submitting to lengthy depositions.

Courts have widely recognized that incentive payments serve an important function in promoting enforcement of state and federal law by private individuals, while also encouraging class action settlements. See Cook v. Niedert, 142 F.3d1004, 1017 (7th Cir. 1998) (approving incentive award of $25,000 to the named plaintiff); In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005); In re Compact Disc Min. Advertised Price Antitrust Litig., 292, F. Supp. 2d 184, 189 (D. Maine 2003); Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. 20020 (collecting cases approving incentive payments). As Judge Hornby recognized, a 2006 study found that while the average incentive payment approved in class action settlements was around $15,000, awards in wage cases were generally higher. Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303, 1308 (2006)). Judge Hornby found that recent awards in employment cases reached $30,000 and higher Id. (citing Cook, 142 F.3d at 1016 ($25,000 incentive award approved for one named plaintiff)); see also Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012) (approving service awards of $5,000 each to two plaintiffs, noting that "[s]uch service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution

of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs"); Toure v. Amerigroup Corp., 2012 WL 3240461, at * 5 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); Simmons v. Enterprise Holdings, Inc., 2012 WL 2885919, *2 (E.D. Mo. July 13, 2012) (approving "payment of individual incentive awards to the named Plaintiffs in the amount of $6,000.00 as set forth in the Settlement Agreement for their services as class representatives and as consideration for providing a general release"); Sewell v. Bovis Lend Lease, Inc., 2012 WL 1320124, at * 14–15 (S.D.N.Y. Apr. 16, 2012) (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); Reyes v. Altamarea Group, LLC, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 to three class representatives and $5,000 to fourth class representative in restaurant case challenging tip and minimum wage policies); Willix v. Healthfirst, Inc., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500); Torres v. Gristede's Operating Corp., 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); Khait v. Whirlpool Corp., 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action); In re Janney Montgomery Scott LLC Fin. Consultant Litig., 2009 WL 2137224, *12 (E.D.Pa. July 16, 2009) (approving $20,000 payments to three named plaintiffs in complex FLSA)). Moreover, Judge Hornby approved $130,000 in incentive payments ranging from $10,000 to $20,000 for each of nine named plaintiffs who actively participated in the litigation. Id. See also Zolkos v. Scriptfleet, Inc., No. 12 Civ. 8230(GF), 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (awarding $148,000 in incentive payments ranging from $3,500 to $10,000 per plaintiff).

17

One of the reasons for finding higher incentive payment in employment cases, including wage and hour cases, is the issue of retaliation. See, e.g., Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 24 (D. Mass. 2010) (in certifying national class of skycaps challenging $2 per bag curbside check-in charges, court noted with approval skycaps' argument that "class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis" and held that class action "is a superior method for adjudication of the controversy"); Perez v. Safety-Kleen Systems, Inc., 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because, *inter alia*, "some class members may fear reprisal"); Guzman v. VLM, Inc., 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). This same consideration makes enhancement payments even more crucial in employment class action settlements. As one court has observed: "[Enhancement] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

In light of the arm's-length, hard fought negotiation in this case and Class Counsel's prior experience and expertise in this area of law, the Court should find this proposed settlement to be fair, reasonable, and adequate and should issue preliminary approval. See Armstrong, 616 F.2d at 314 (settlement agreement need only fall within reasonable range of possible approval to be preliminarily approved).

18

## VI. THE REQUESTED ATTORNEYS' FEES AND COSTS ARE FAIR, REASONABLE, AND SUPPORTED BY APPLICABLE PRECEDENT

In the motion for final approval, Class Counsel will request an award of attorneys' fees and costs which will provide them with a net of $933,000, approximately one-third of the total settlement. This award would cover all costs incurred to date by Class Counsel, as well as the significant costs Class Counsel will incur in the next several months administering the Settlement Class Fund, calculating actual share distributions, taking care of all mailings and filings, etc. To date, Class Counsel have paid for the costs associated with four depositions, half of the mediation fees, and fees related to filing and investigating this case. Class Counsel will incur additional expenses related to mailings and other costs associated with administering the Settlement Class Fund. Further, Class Counsel's ability to administer the Settlement Class Fund without hiring a class action settlement administrator will result in a substantial savings to the settlement fund, which can then be more properly used to pay distribution shares to class members.

The proposed notice of settlement will inform class members that approximately one-third of the settlement proceeds would be used to pay for all attorneys' fees and costs based on the fact that Class Counsel accepted this case on a fully contingent arrangement with no payment of fees or expenses by any client. Further, the Class Representatives signed Retainer Agreements providing that counsel would receive one-third of the proceeds received in any judgment or settlement. Courts generally favor awarding fees from a common fund based upon a percentage of the fund. As the Supreme Court has explained:

> This Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorneys' fee from the fund as a whole . . . jurisdiction over the fund involved in the

> litigation allows the Court to prevent . . . inequity by assessing attorneys' fees against the entire fund thus spreading fees proportionally among those benefited by the suit.

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). Indeed, a one-third attorneys' fee award in a common fund case has been consistently approved as reasonable in wage and hour cases in the Northern District of Illinois. See, e.g., McCue v. MB Fin., Inc., No. 15 cv 988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (finding that the Seventh Circuit's decision in Pierce v. Visteon Corp., 2015 WL 3985985 (7th Cir. July 1, 2015) does not preclude a percentage of the common fund recovery in the settlement context and awarding 1/3 of common fund as attorneys' fees); Zolkos, 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (awarding 1/3 of the common fund as attorneys' fees); Acosta, et al. vs. Scott Labor, et al., Case No. 05 C 2518 (D.E. 120) (awarding 33 1/3% of common fund in overtime case); Yon v. Positive Connections, Inc., Case No. 04 C 2680 (D.E. 69) (awarding 33% of the common fund in overtime case); Sanchez v. Stampede Meat, Inc., Case No 02 C 5452 (D.E. 70) (awarding 33 1/3% of common fund in overtime case); Gonzalez v. Labor Network, Case No. 05 C 4864 (D.E. 137) (awarding 33 1/3% of common fund in overtime case); Perugachi v. Valet Parking Service, Inc., Case No. 04 C 1783 (D.E. 60) (awarding 33% of the common fund in overtime case); Alejandro v. Surestaff, Inc., Case No. 04 C 2889 (D.E. 33) (awarding 33% of the common fund in overtime case); Aguirre et al v. Central Continental Bakery, Inc., Case No. 05 C 2013 (D.E. 54) (awarding 33% of the common fund in overtime case); Herrera v. Chicago Mattress, Inc., Case No. 06 C 1872 (D.E. 49) (awarding 33% of the common fund in overtime case); Flores v. Jorge Arteaga Corp., Case No. 05 C 2057 (D.E. 53) (awarding 33 1/3% of common fund in minimum wage and overtime case); Ortegon v. Staffing Network, Inc., Case No. 06 CH 12679, Order dated July 24, 2009, (awarding 33% of common fund in IDTLSA and overtime case); Perezchica, et al. vs. Eastco

_International Corp., et al_, Case No. 07 CH 04726, Order dated March 18, 2008 (awarding 33 1/3% of common fund in overtime case). Given this precedent, approving a one-third recovery for attorneys' fees and costs in this class action case, which includes all costs and expenses, is reasonable. This is especially true where Class Counsel will be absorbing the costs of administering the settlement by performing this function themselves, reducing potential class costs.

## VII.    **CONCLUSION**

For the reasons set forth herein, Plaintiffs respectfully request that this Court grant preliminary approval of this proposed settlement, sign the proposed order attached as Exhibit D, and allow Plaintiffs to send class members the proposed Notices and Claim Forms attached hereto as Exhibit A and B.

Dated: September 22, 2015                    Respectfully submitted,

Marc Siegel, #6238100                        MARVIN BRANDON, RAFAEL
Bradley Manewith, #06280535                  AGUILERA, and ALDO MENDEZ-
Siegel Law Group, Ltd.                       ETZIG, individually and on behalf of all
150 N. Wacker, Ste. 1100                     others similarly situated,
Chicago, IL  60606

                                             By: /s/ Harold Lichten
Harold L. Lichten BBO# 549689                    Attorney for Plaintiffs
Benjamin J. Weber BBO# 673736
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the attached, **Agreed Motion for Preliminary Approval of Class Action Settlement,** was served upon the parties below by electronically filing with the Clerk of the U.S. District Court of the Northern District of Illinois and by electronic mail on September 22, 2015:

Robert L. Browning
James T Spolyar
Scopelitis, Garvin, Light & Hanson & Feary, P.C.
10 West Market Street, Suite 1500
Indianapolis, IN 46204

Adam Carl Smedstad
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
30 W Monroe Street, Suite 600
Chicago, IL 60603

Harold L. Lichten
Benjamin J. Weber
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116

Courtesy copies were delivered to Judge Guzman's Courtroom Deputy (Room 1218) within 24 hours of e-filing.

By: /s/ Harold Lichten
Attorney for Plaintiffs

4816-6174-2630, v.  5-6174-2630, v.  44816-6174-2630, v.  3